# Winder *against* Smith.*

J. S. and G. S. brought an action against W. F. K., L. K. and W. H. W., and obtained judgment therein, and on the 21st May 1841, issued a *pluries capias ad satisfaciendum* thereon, upon which W. H. W. was arrested, and gave bond to take the benefit of the insolvent laws, and was thereupon discharged from custody.   At the time of his arrest W. H. W. was possessed of considerable personal property, had more money on deposit in bank than would have paid the amount of the execution, and was the owner of a large real estate.   He forfeited his bond, and an action of debt was brought against him and his surety upon it, to which he pleaded that by reason of the possession and ownership of the real and personal above mentioned, the arrest amounted to duress and the bond was void.   *Held*, that since the Act of 16th June 1836, exemption from arrest is a privilege, and that submitting to it and giving bond is a waiver of the privilege.

ERROR to the District Court for the city and county of *Philadelphia*, in which J. and K. Smith brought an action of debt against Winder and M'Lanahan, and declared as follows :

"William H. Winder and Johnston M'Lanahan were summoned to answer John K. Smith and George K. Smith, of a plea that they render unto them the sum of $2500, which to them they owe and from them unjustly detain.

And thereupon the plaintiffs, by their attorney, complain for that whereas the said defendants heretofore, to wit, on the 21st day of May 1841, at the county aforesaid, in and by their certain writing obligatory sealed with their seals and now shown to the court here, the date whereof is the day and year aforesaid, did acknowledge themselves to be held and firmly bound unto the said plaintiffs in the said sum of $2500, above demanded, to be paid to the said plaintiffs, their executors, administrators or assigns ; to which payment well and truly to be made, they, the said defendants, did bind themselves, their heirs, executors and administrators, *jointly* and *severally*, which said writing obligatory was and is subject to a certain condition thereunder written, to the effect following, to wit: that the said William H. Winder had been arrested on a *ca. sa.* issued by the District Court for the city and county of Philadelphia, at the suit of the said plaintiffs, for the sum of $1052.62, with interest from March 1st 1839, beside costs, and who had made application to the prothonotary of the Court of Common Pleas of the city and county of Philadelphia, to give bond with sufficient security to comply with the provisions of the Act of the General Assembly of the Commonwealth of Pennsylvania, passed the 16th day of June 1836, entitled " an Act relating to insolvent debtors," and as security for whom the said pro-

---

* We are indebted to E. D. Ingraham, Esq. for the report of this case.—REPS.

thonotary had approved of the said Johnston M'Lanahan, that if the said William H. Winder should appear at the term of the Court of Common Pleas for the said county then next ensuing, and then and there present his petition for the benefit of the insolvent laws of this commonwealth, and comply with all the requisitions of .the said law, and abide all the orders of the said court in that behalf, or in default thereof, and if he should fail in obtaining his discharge as an insolvent debtor, that he should surrender himself to the gaol of the said county, then the said obligation should be void, otherwise to be and remain in full force and virtue.

Yet, notwithstanding, the said William H. Winder did not appear at the said term as aforesaid, and then and there present his petition for the benefit of the insolvent laws of this commonwealth, and comply with all the requisitions of the said law, and abide the orders of the said court in that behalf, or being in default thereof, and having failed in obtaining his discharge as an insolvent debtor, he did not surrender himself to the gaol of the said county, whereby an action hath accrued to the said plaintiffs to demand and have of and from the said defendants the said sum of $2500 in form aforesaid, acknowledged and above demanded. Yet the defendants (although often requested so to do) have not as yet *paid the said* sum of $2500 above demanded, or any part thereof, to the said plaintiffs, but to do this have hitherto wholly neglected and refused, and still do neglect and refuse."

To this declaration the defendants pleaded *non est factum*, and the following special plea:

"And the said defendants, for a further plea in this behalf, by leave of the court first had and obtained, according to the form of the statute in such case made and provided, say that the said plaintiffs ought not to have or maintain their aforesaid action thereof against them, because they say that the said plaintiffs on the 30th day of June 1837, and before the making of the said writing obligatory, impleaded one William F. Krumbhaar, one Lewis Krumbhaar, and the said William H. Winder, in an action of debt in this honourable court, to the term of June in the year last aforesaid, number 1021, and the same was so proceeded in that on the 16th day of September, in the year last aforesaid, the said plaintiffs, by the consideration of the same court, recovered against the said William F. Krumbhaar, Lewis Krumbhaar and William H. Winder, as well a certain debt of $1800, lawful money of the United States of America, as also $10.25, which to the said plaintiffs were adjudged for their damages which they sustained, as well by occasion of the detention of that debt as for their costs and charges by them about their suit in that behalf expended, as in and by the record thereof remaining in the same court will more fully and at large appear. And the said defendants further say, that on the 18th day of May 1841, and on the

[Winder v. Smith.]

21st of May in the year last aforesaid, and for a long time before and after and at the time of the arrest of the said William H. Winder upon the *pluries capias ad satisfaciendum* hereinafter mentioned, the said William H. Winder was the owner in fee simple of a three story brick house and lot of ground thereunto belonging, situate on the south side of Arch street, near Schuylkill Sixth street, in the city of Philadelphia, of the value of $10,000, subject to a mortgage of $5000; and also owned 156 barrels of beef, worth $1162, 22 barrels of pork, worth $220, in his the said Winder's store, number 37 South Wharves, in said city, 10 shares in the Washington Insurance Company in the said city, worth $150, and a mortgage duly recorded for $1000, on a lot and houses at the corner of Cohocson creek and Third street, in the county of Philadelphia, and also 550 barrels of beef, worth $3850, in the city of New York, and also owned and had upon deposit in the Girard Bank in the city of Philadelphia, the sum of $2000, lawful money aforesaid, of which said last-mentioned ownership and property real and personal, the said plaintiffs and the said sheriff then and there had notice. And the said defendants further say, that the said plaintiffs on the said 18th day of May, in the year last aforesaid, caused to be issued upon the said judgment so as aforesaid recovered, a certain writ of the commonwealth of Pennsylvania, commonly called a writ of *pluries capias ad satisfaciendum*, directed to the sheriff of Philadelphia county, whereby the said sheriff was commanded that he should take the said William F. Krumbhaar, Lewis Krumbharr, and William H. Winder, if they should be found in his bailiwick, and them safely keep so that he should have their bodies before the Judges at Philadelphia, at the District Court for the city and county of Philadelphia, there to be held the first Monday of June then next ensuing, to satisfy the said plaintiffs the said debt of $1800, so as aforesaid recovered, as also the said $10.25 so as aforesaid adjudged to them for their damages, costs and charges. And the said defendants further say, that the said sheriff on the 21st day of May in the year last aforesaid, did unlawfully take the said William H. Winder by his body upon the said last-mentioned writ, and illegally imprisoned him for the space of four hours, whereupon the said William H. Winder and Johnston M'Lanahan, to procure the release and discharge of the said William H. Winder from said illegal imprisonment, and through the duress thereof, did make and execute the said writing obligatory to the said plaintiffs: by means of which said several premises and of the Act of the General Assembly of the Commonwealth of Pennsylvania, in such case made and provided, the said writing obligatory in the said declaration mentioned is utterly void: and this the said defendants are ready to verify, wherefore they pray judgment, if the said plaintiffs ought to have or maintain their aforesaid action thereof against them, &c."

[Winder. v. Smith.]

The plaintiffs took issue on the first plea, and demurred generally to the second, and the defendants joined in demurrer.

Upon the argument of the demurrer the court below gave judgment for the plaintiffs—which was now assigned for error.

*Ingraham* and *Meredith*, for the plaintiffs in error.

By the 28th section of the Act of 16th June 1836, entitled, "an Act relating to executions," (*Purd*. 414, 415, 6 *Ed*.), it is provided that "no writ of *capias ad satisfaciendum* shall in any case be executed, where the defendant has real or personal estate sufficient to satisfy the judgment; and if the defendant shall not have sufficient fully to satisfy the judgment and costs of execution, then such writ may be executed for the deficiency." Now what is prohibited by the Act of Assembly is unlawful. No court will carry it into effect. An action will lie against the party infringing the law, and all acts in pursuance of the infraction of such a law are void. An indictment will lie for such violation. *Berry* v. *Hamill*, (12 *Serg. & Rawle* 210), and the cases cited. The execution of this writ was directly in the teeth of the Act of Assembly. The plaintiff knew of the defendant's ability to pay, and would not give him the chance of showing property, for he issued no *fieri facias* with the *pluries capias ad satisfaciendum. Allison* v. *Rheam*, (3 *Serg. & Rawle* 141). The grievance under the former Act of Assembly was the execution of the writ as it is now. *Berry* v. *Hamill*. The act of arrest was void; trespass would lie for it, and how could it be cured by the bond? 6 *Mass*. 506; 15 *Johns*. 256. What makes the bond procured by this unlawful arrest good? Does the law allow, by this circuity, the making good of such an arrest? These bonds are not voluntary bonds. 5 *Watts* 346. Even where the arrest is lawful, they must be exactly of the character that the law which authorizes them to be given prescribes, or they are void. *Ibid*. And this is a suit on one of them to carry it into effect as an insolvent bond; so that the argument must be, that a good arrest must be defeated if the bond be irregular, but a void arrest may be rendered good and available to the plaintiff, if the bond be regularly drawn.

It is therefore considered by the law as given under duress, if it be required in a form different from that the law requires; and though the obligor get the benefit of it, it is not good as a voluntary bond at common law. 13 *Serg. & Rawle* 190; 14 *Serg. & Rawle* 380, and the cases cited. See 10 *Serg. & Rawle* 325. *Egbert* v. *Darr*, (3 *Watts & Serg*. 517), was the case of lawful imprisonment and estoppel by the fraud of defendant. So the imprisonment was lawful, and the bond was to the plaintiff—was voluntary and good, in 16 *Serg. & Rawle* 307. It was not pretended to be a statutory bond. The proceeding was right in 5 *Mass*. 316. So 7 *Mass*. 98. The question in 12 *Serg. & Rawle* 106, was whether a discharge

[Winder v. Smith.]

obtained by fraud was an answer to the bond.   Nay, if a bond be given in a proceeding in which it is unlawful to ask or to give it, as by a criminal who is not the subject of it, and the obligor get all the benefit of it, the party who took it, knowing he ought not to have taken, derives no benefit from it.   He cannot aver it to be voluntary; 3 *Watts* 384; where that was the argument.   The arrest was lawful in 2 *Miles* 166.   The defendant declined to assert a privilege intended for his benefit, which he might do, 16 *Serg. &* *Rawle* 50, and that waived, he was the proper subject for a continued arrest, discharged lawfully by a bond under the statute.

*Williams* and *Miles* for the defendants in error.   In this case there is nothing to show that the Krumbhaars were not liable to arrest on a *ca. sa*; and, if they were liable, Winder had no privilege, for having joined himself with persons not privileged, he thereby lost his own privilege. 2 *P. A. Bro.* 135; 2 *Johns.* 252; 5 *Bac. Ab.* 619; 2 *Vern.* 246; 2 *Roll. Ab.* 274; 1 *Ventr.* 298; *Stran.* 610; *Dyer* 377.   Now this exemption from arrest under the Act of 16 June 1836, is clearly a privilege.   This writ was not a void writ, but it was not to be executed because of the party's privilege as to his person, similar to that of a freeholder, who loses his if he is joined with a person liable to arrest. 2 *P. A. Bro.* 135. It is clear, too, that a *fi. fa.* and *ca. sa.* could not have both been executed at the same time against all the defendants, nor one writ against two of the defendants and one against the other.   The Krumbhaars, if arrested, could not have pleaded that Winder had property, nor could Winder relieve them from arrest on that account. The writ therefore, if regular against them, as it was, would of course be good against all the defendants.   The Acts of 1724–5, and of April 13 1807 (4 *Sm. Laws* 477) contain provisions more positive than the Act of 1836, yet both a *fi. fa.* and *ca sa.*, it has always been held, might issue, and the defendant elect which should stand. 2 *Binn.* 230; 3 *Binn.* 404.   This writ is not void, *Allison* v. *Rheam*, (3 *Serg. & Rawle* 142); 8 *Mod. Rep.* 280; *Berry* v. *Hamill* (12 *Serg. & Rawle* 210), and by giving bond the defendant submitted to it, and waived his privilege, and cannot raise this question in a collateral manner, as he attempts to do here.   13 *Serg. & Rawle* 199; *S. C.* 1 *Watts*, 135.   The course should have been to set aside the writ, by application to the court out of which it issued, as was done in *Allison* v. *Rheam*, and *Berry* v. *Hamill*, according to the statement in 4 *Whart.* 343.   As to the ground taken, that there was duress,—for the whole plea amounts to that,—it cannot be sustained, for to constitute duress the restraint must be unlawful; and even if there existed duress, the surety in the bond, M'Lanahan, could not plead it.   *Cro. Jac.* 187; *Hurlstone on Bonds*, 139; 15 *Johns* 256.

The opinion of the Court was delivered by

[Winder v. Smith.]

GIBSON, C. J.—There is one view of this case which relieves us from considering it in any other. There can be no duress from mere imprisonment when it is lawful; and an arrest like the present was held to be unlawful in *Allison* v. *Rheam*, only because the *capias ad satisfaciendum* was prohibited under the circumstances, and consequently void. On that ground and no other was the defendant held liable in an action of trespass for false imprisonment. The statute now in force, or that which was in force at the time of the arrest now in question, does not prohibit the *capias* in the first instance; and an arrest under it, where there is property to the value, is only voidable at the election of the debtor. It is very true that such an arrest persisted in against the remonstrance of the debtor, might make the creditor a trespasser; but nothing like remonstrance is averred in the plea. The statute enacts that a *capias ad satisfaciendum* and a *fieri facias* may be sued out together; but that the former may not be executed where the defendant has property in the county to answer the debt and costs. The conditional exemption of the debtor's person, like every personal privilege, may be waived; and it is virtually waived when the debtor allows himself to be arrested without objection, and without pointing out his property as the legitimate source of satisfaction. As a matter applicable to the interpretation of the present statute, we dissent from the *dictum* of Mr. Justice DUNCAN in *Berry* v. *Hamill*, that it is the business of the creditor to inform himself of the debtor's property, and that he acts in respect to it at his peril. True, it was decided in *Allison* v. *Rheam* that the existence of property to the value *ipso facto* made the *capias* void; but it was held that the creditor might call on the debtor for the proper information; and it is not to be doubted that if the latter had refused to give it, he would have been estopped from showing the truth of the case afterwards, in order to make the creditor a trespasser. Thus the *capias* would have been sustained notwithstanding the prohibition; and thus, according to *Allison* v. *Rheam*, the law would have been held under the late statute. Its successor makes the legality of the arrest depend, not on the validity of the writ, but on the propriety of its application. It sanctions the practice, prevalent under its predecessor, of suing out a *capias* and a *fieri facias* together; and, not declaring the writ to be unlawful in the first instance, it admits of a more liberal construction. Now the object to be attained was not to entrap the creditor or beset his path with perils, but to exempt the debtor's person from execution where satisfaction could be had from his property; and as the latter was to be the price of the former, it was necessarily made his business to tender it. By not claiming his privilege he waived it; and had he not waived it, he would have been bound to disclose the foundation of his title to it. A debtor is bound to disclose his property in order to exempt his person from arrest under the insolvent law, and why

not disclose it to exempt his person from arrest under the execution law ?   Certain it is that it was not the purpose of the statute to put him in an attitude of defiance, and prompt him to say—"It is not my business to put you on the scent of my property: find it out as you may; but remember you act at your peril, and touch me if you dare." The law is not so unreasonable as to require that the creditor take notice of matters so peculiarly in the debtor's knowledge. It is true the plea contains an averment of notice; but notice of property without a claim of privilege on the foot of it, is not enough. The debtor may elect to waive his privilege and subject his person; and when he elects to have an execution levied on his property, it is his duty to give notice, not of the existence and whereabout of his property merely, but of his election also. Such an election is not to be presumed as an inference of law, for an arrest on final process is not always shunned. It has sometimes been embraced by a debtor as the lesser evil; and imprisonment has been endured for a lifetime rather than part with an estate in payment of debts. It is sometimes not even an adversary proceeding in anything but form, for there have been numerous instances of an arrest by a friend to put the party in the way of getting the benefit of the insolvent laws. A debtor may submit to it, choosing to surrender his property for general distribution rather than suffer the creditor to gain a preference by his execution; and when he says nothing about property or privilege, what is the officer to think? It might perhaps be successfully contended that even his silence would amount to an election at the time. But whatever may have been the validity of the arrest at the instant, it certainly admitted of confirmation, and the debtor as certainly confirmed it when he used it as the foundation of a right. His application to be set at liberty, giving bond to appear and petition at the return of the writ, was founded on the assumption of a lawful arrest. The statute describes him who is competent to make it, as a debtor "arrested, detained or held by virtue (not colour) of any process or bail-piece;" and it is a condition of the bond that he return to imprisonment failing to obtain his discharge—which would scarce have been said of an imprisonment false and unlawful. At least the condition shows that the proceeding was not intended to be a remedy for an unlawful arrest. Now if an exempt choose to waive his privilege, submit to an arrest, and proceed by petition to a judge, instead of a *habeas corpus,* he cannot afterwards refuse to be bound by his election. He may not resort to inconsistent remedies, assuming that the imprisonment is unlawful for one purpose and lawful for another; and this for the same reason that a landlord cannot proceed for use and occupation against a tenant whom he has dispossessed as a trespasser, or that a tenant cannot insist on notice, having denied his landlord's title. It is a fundamental principle of the law of election, that a man shall not affirm one part of an act and

[Winder v. Smith.]

disaffirm another, or treat it as both lawful and injurious. By giving bond, the debtor took a position from which it is too late to recede. He admitted the imprisonment to be lawful; and where that is the case, duress from it is out of the question. It is said that if a man lawfully in prison make an obligation against his will, he may avoid it. *Roll. Abr.* 687. Doubtless he may, where there has been duress by other means of compulsion than the confinement. Where a plaintiff in a judgment which was recovered without a legal cause · of action, had the defendant arrested under threats of imprisonment till he should perish if he would not execute a release, this was held not to be duress, but the exercise of a right by due course of law. 1 *Lev.* 69. It appears by the plea that the bond before us was given at the debtor's own instance, and as his voluntary act. Whether he had originally forfeited his privilege by joining with unprivileged contractors, it is unnecessary to determine, as he certainly renounced it when he consented to be arrested and recognised the lawfulness of his imprisonment.

Judgment affirmed.